IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

03C 202450

| | |
|---|---|
| TIMOTHY ALBRIGHT<br>37 Florentine<br>Platte City, Missouri 64079, | Case No. _____ |
| And | Division _____ |
| DAVID NEARY<br>516 N. Doniphan<br>Lawson, Missouri 64062,<br>　　　　Plaintiffs, | |
| vs. | |
| MISSOURI GAS ENERGY,<br>a division of SOUTHERN UNION<br>COMPANY<br>3420 Broadway<br>Kansas City, Missouri 64111 | |
| Serve Registered Agent:<br>　　The Delaware Corporation<br>　　CT Corporation System<br>　　120 South Central Avenue<br>　　Clayton, Missouri 63105,<br>　　　　Defendant. | |

## PETITION FOR DAMAGES

Comes Now the Plaintiffs, Timothy Albright and David Neary, by and through their attorney, N. Trey Pettlon, and for Count I of their cause of action against the Defendant, Missouri Gas Energy, hereby allege and state to the Court as follows:

### COUNT I - NEGLIGENCE

1. That the Plaintiff Albright is and was at all relevant times hereinafter mentioned a natural person residing in Platte City, Platte County, Missouri.

2. That the Plaintiff Neary is and was at all relevant times hereinafter mentioned a natural person residing in Lawson, Missouri.

3. That the Defendant, Missouri Gas Energy (hereinafter "MGE") is and was at all relevant times hereinafter mentioned a corporation doing business in the State of Missouri with a business location of 3420 Broadway, Jackson County, Kansas City, Missouri 64111 so venue and jurisdiction properly reside with this Court.

4. Defendant MGE owns and operates the natural gas distribution system in Kansas City, Missouri.

5. Defendant MGE hired Midwest Gunite and Restoration (hereinafter "Midwest Gunite"), an independent contractor, to replace aged lid covers on two of MGE's natural gas pipeline vaults (hereinafter "utility vaults" or "vaults") including the utility vault located at Buchanon Avenue and 32nd Avenue and a nearby vault located at 33rd Street and Olive Street.

6. On December 7, 2001 Midwest Gunite replaced the vault doors on an MGE utility vault located at 33rd Street and Olive Street.

7. That same day a fire was reported at an MGE utility vault located at 33rd Street and Olive Street; MGE was advised of this fire and inspected the scene at the vault there and determined that there was an accumulation of natural gas inside the vault.

8. That the door to the utility vault at 33rd Street and Olive Street, which was installed by Midwest Gunite under the direction of MGE, did not permit sufficient venting of natural gas.

9. That MGE did not advise Midwest Gunite or its employees or Plaintiffs of any potential danger as a result of the December 7, 2001 incident or otherwise take precautions to ensure that Plaintiffs would not face the danger of a natural gas explosion.

10. That at approximately 8:00 a.m. on the 10th day of December, 2001,

Plaintiffs were working for Midwest Gunite and were performing maintenance on a pipeline utility vault located at the intersection of Buchanon Avenue and 32nd Avenue in Kansas City, Clay County, Missouri.

11. The natural gas system in the vicinity of Buchanan Avenue and 32nd Avenue is operated by MGE and consists of several pipelines of various sizes and operating pressures housed within a utility vault.

12. Plaintiff Neary were attempting to remove wood-constructed concrete forms when Plaintiff Neary, who was inside the vault, began using an electric impact wrench to attempt to remove a piece of the plywood form from inside the vault just as Plaintiff Albright was attempting to enter the vault through a 2 foot by 2 foot opening at the top of the vault; when the impact wrench was utilized there was a flash explosion inside the vault which severely injured and burned both Plaintiffs, and propelled Plaintiff Albright thirty feet in the air and across the street where he landed on a pick up truck.

13. Defendant MGE had exclusive right and control over the utility vault located at the intersection of Buchanon Street and 32nd Street at the time of the explosion.

14. Defendant MGE had a duty to ensure that all of its employees or others that it hired as independent contractors to perform labor on or about the utility vault took appropriate precautions to ensure their own safety on or around the vault.

15. Defendant MGE had a duty to ensure that all of its employees or others that it hired as independent contractors to perform labor on or about the utility vault were fully trained and complied with Federal statutes, regulations, ordinances and other safety procedures.

16. That the aforesaid explosion and the resultant injuries to Plaintiffs were the direct and proximate cause of the carelessness and negligence of the Defendant in the

following respects, to wit:

(a) MGE failed to recognize the ventilation restrictions caused by the installation of plywood, to wit: the vault doors purchased by Defendant and installed by its independent contractor Midwest Gunite did not provide sufficient ventilation to prevent the unsafe accumulation of natural gas.

(b) Midwest Gunite employees, including Plaintiffs, were not trained to build vault doors to provide adequate ventilation.

(c) MGE did not provide adequate instruction to Midwest Gunite or its employees regarding pertinent safety regulations, statutes, ordinances and/or codes that should be complied with to ensure safety while working in and around their utility vaults.

(d) MGE did not advise or otherwise provide training to Midwest Gunite or its employees regarding the mandatory Vault Entry and Safety precaution procedures within the MGE operations and maintenance manual.

(e) MGE provided no safety training to the Plaintiffs prior to the work that they attempted to perform on the day of the explosion including training in the following areas:

    (1). recognizing potential ignition sources;

    (2). recognizing conditions that are likely to cause emergencies;

    (3). taking steps to control the release of natural gas and minimize the potential fire or explosion, and

    (4). the availability and proper use of specialized tools to be used in a gaseous atmosphere.

(f) MGE failed to supervise or otherwise oversee the specific tasks to be performed by Midwest Gunite and its employees to ensure that proper safety procedures were being followed;

(g) MGE failed to review the safety procedures and the training of employees

utilized and employed by Midwest Gunite to be certain that it complied with minimum safety procedures recognized in the industry and enforced by the Missouri Public Service Commission.

(h) MGE failed to ensure that the utility vault was designed with adequate ventilation.

(i) Prior to Plaintiffs entering the MGE vault to work on the vault doors on December 10, 2001, MGE did not test to determine whether natural gas had accumulated after the doors had been tightly sealed for the two days since the fire was witnessed at the nearby vault.

(j) Furthermore, MGE had not even advised Midwest Gunite or its employees of the fire that took place nearby just three days earlier or otherwise to warn them to take additional precautions.

17. That as a direct and proximate result of the negligence, carelessness, commissions and omissions of Defendant as aforesaid, the Plaintiff Albright has incurred substantial discomfort, pain and suffering, and he has sustained permanent, progressive, serious and severe injuries resulting in permanent impairment and disability to his body in the following respects: Said Plaintiff suffered extensive deep third degree burns on over fifty percent of his body including both legs, both arms, his chest, groin and face resulting in multiple debridements and skin graft operations; Said Plaintiff sustained a severe fracture to his right femur, a right scapular fracture as well as a right humeral fracture; Said Plaintiff sustained a splenic laceration that required a splenectomy; Said Plaintiff suffered a concussion; Said Plaintiff's extremities, including but not limited to, the muscles, tendons, tissues, bones, skin, cartilage, cells, blood, ligaments and parts thereof were torn, stretched, strained, sprained, dislocated, contused and/or bruised; Said Plaintiff's head, neck, back, shoulder, spine, chest, groin and the muscles, tendons, tissues,

bones, skin, cartilage, cells, blood, ligaments and parts thereof were torn, stretched, strained, sprained, dislocated, contused and/or bruised; all of the above injuries resulting in severe discomfort, pain, suffering, tenderness and a period of complete immobility of his legs, arms and body; that Said Plaintiff was forced to undergo medical treatment including but not limited to: hospitalization, multiple operations including multiple debridements, skin grafting procedures, a splenectomy, intensive care, admission to the Burn Unit at Kansas University Hospital, tube feeding, several months of extensive and painful physical therapy, pressure garments; that all of the aforesaid injuries were serious and painful and caused Plaintiff great discomfort, pain and suffering of mind and body and said injuries have seriously disabled and rendered painful the past, present and future use of the body parts so injured; that the Plaintiff will in the future be required to undergo medical treatment for his injuries; that as a result of said injuries, Plaintiff has incurred trauma, headaches, nervousness, sleeplessness, anxiety, weight loss and severe depression; and that as a direct and proximate result of said injuries Plaintiff Albright has been damaged in excess of the sum of Twenty-Five Thousand and No/100 ($25,000.00) dollars.

18. That as a direct and proximate result of the carelessness, negligence, commissions and omissions of the Defendant, the Plaintiff Albright's general health, strength and vitality have been injured and impaired; that all of the Plaintiff's said injuries are permanent, progressive, serious and severe in nature; that Plaintiff has incurred and will incur in the future substantial hospital expenses, doctor expenses, physical therapy expenses, prescription drug expenses, necessary medical apparatus expenses, and other medical expenses in an amount unknown at this time, and Plaintiff has also been caused to sustain and incur substantial lost wages, transportation costs back and forth to the hospital and for treating physicians, all to Plaintiff Albright's damages in excess of the sum of Twenty-Five Thousand and No/100 ($25,000.00) Dollars.

19. That as a direct and proximate result of the physical injuries incurred by Plaintiff Albright, he has suffered and will continue to suffer great physical pain and suffering, permanent disfigurement, mental anguish and depression, severe mental and physical trauma, permanent, progressive, serious, severe and partial disability/impairment in the future, all to Timothy Albright's damage in excess of the sum of Twenty-Five Thousand and No/100 ($25,000.00) Dollars.

20. That as a direct and proximate result of the negligence, carelessness, commissions and omissions of Defendant as aforesaid, the Plaintiff Neary has incurred substantial discomfort, pain and suffering, and he has sustained permanent, progressive, serious and severe injuries resulting in permanent impairment and disability to his body in the following respects: Said Plaintiff suffered extensive deep third degree burns on his face, both arms and wrists, Said Plaintiff's extremities, including but not limited to, the muscles, tendons, tissues, bones, skin, cartilage, cells, blood, ligaments and parts thereof were torn, stretched, strained, sprained, dislocated, contused and/or bruised; Said Plaintiff's head, neck, back, shoulder, spine, chest, groin and the muscles, tendons, tissues, bones, skin, cartilage, cells, blood, ligaments and parts thereof were torn, stretched, strained, sprained, dislocated, contused and/or bruised; all of the above injuries resulting in severe swelling, discomfort, pain, suffering, tenderness; that Said Plaintiff was forced to undergo medical treatment including but not limited to: hospitalization, admission to the Burn Unit at Kansas University Hospital, that all of the aforesaid injuries were serious and painful and caused Plaintiff great discomfort, pain and suffering of mind and body and said injuries have seriously disabled and rendered painful the past, present and future use of the body parts so injured; that the Plaintiff will in the future be required to undergo medical treatment for his injuries; that as a result of said injuries, Plaintiff has incurred trauma, headaches, nervousness, sleeplessness, anxiety, weight loss and severe depression; and

that as a direct and proximate result of said injuries Plaintiff Neary has been damaged in excess of the sum of Twenty-Five Thousand and No/100 ($25,000.00) dollars.

21. That as a direct and proximate result of the carelessness, negligence, commissions and omissions of the Defendant, the Plaintiff Neary's general health, strength and vitality have been injured and impaired; that all of the Plaintiff's said injuries are permanent, progressive, serious and severe in nature; that Plaintiff has incurred and will incur in the future substantial hospital expenses, doctor expenses, prescription drug expenses, and other medical expenses in an amount unknown at this time, and Plaintiff has also been caused to sustain and incur substantial lost wages, transportation costs back and forth to the hospital and for treating physicians, all to Plaintiff Neary's damages in excess of the sum of Twenty-Five Thousand and No/100 ($25,000.00) Dollars.

22. That as a direct and proximate result of the physical injuries incurred by Plaintiff Neary, he has suffered and will continue to suffer great physical pain and suffering, permanent disfigurement, mental anguish and depression, severe mental and physical trauma, permanent, progressive, serious, severe and partial disability/impairment in the future, all to David Neary's damage in excess of the sum of Twenty-Five Thousand and No/100 ($25,000.00) Dollars.

WHEREFORE, Plaintiffs pray for judgment against Defendant MGE in an amount in excess of twenty-five thousand dollars ($25,000.00) which will fairly and reasonably compensate Plaintiffs for their past, present and future medical expenses, including but not limited to hospitalization, physician care treatment, physical therapy, prescription drugs, for permanent disfigurement, for permanent, progressive, serious and severe personal injuries, impairment and/or disability, for past, present and future discomfort, pain and suffering, mental and physical trauma, medical expenses, lost wages, transportation expenses; for Plaintiffs' costs herein incurred in this action and for such other orders and

relief as this Court may deem just and proper in the premises.

## COUNT II - NEGLIGENT PER SE

Comes Now the Plaintiffs, Timothy Albright and David Neary, by and through their attorney of record, N. Trey Pettlon, and for Count II of their cause of action against the Defendant Missouri Gas and Energy, hereby allege and state to the Court as follows:

23. That the Plaintiffs incorporate by reference herein as if fully set forth herein, each and every statement, averment and/or allegation contained in paragraphs one (1) through twenty-four (24) of Count I of the Plaintiffs' Petition for Damages.

25. Defendants actions violated Federal and State regulations which are specifically intended to prevent the incident that occurred herein.

26. Defendant was negligent per se in the following ways:

(a) MGE did not provide for adequate ventilation in the utility vault in violation of 4 CSR 240-40.030 (4)(Y).

(b) MGE did not adequately inspect its utility vault and pressure regulation equipment housed therein in violation of 4 CSR 240-40.030 (13)(W).

(c) MGE did not provide instruction or training to its contracted laborers including Plaintiffs on how to take steps to minimize the danger of accidental ignition of gas in a structure or area where the presence of gas constitutes a hazard of fire or explosion in violation of 4 CSR 240-40.030 (13)(X).

(d) MGE failed to test the atmosphere in a confined space, to wit, the utility vault, before allowing Plaintiffs to enter into the pipeline facility which falls under the jurisdiction of the Missouri Public Service Commission pipeline safety regulations in violation of 4 CSR 240-40.030 (13)(X).

(e) MGE failed to ensure that its contractor, Midwest Gunite, and Plaintiffs, who were employed by Midwest Gunite, were following Missouri Public

Service Commission pipeline safety regulations in violation of 4 CSR 240-40.030 (B)(3).

(f) MGE failed to train and/or test the Plaintiffs to "perform on a pipeline system an operation, maintenance or emergency-response function" and failed to ensure that Plaintiffs were directly supervised by someone who properly met the requirements for the applicable minimum qualifications in violation of 4 CSR 240-40.030(12)(D).

WHEREFORE, Plaintiffs pray for judgment against Defendant MGE in an amount in excess of twenty-five thousand ($25,000.00) dollars which will fairly and reasonably compensate Plaintiffs for their past, present and future medical expenses, including but not limited to hospitalization, physician care treatment, physical therapy, prescription drugs, for permanent disfigurement, for permanent, progressive, serious and severe personal injuries, impairment and/or disability, for past, present and future discomfort, pain and suffering, mental and physical trauma, medical expenses, lost wages, transportation expenses; for Plaintiffs' costs herein incurred in this action and for such other orders and relief as this Court may deem just and proper in the premises.

## COUNT III- PUNITIVE DAMAGES

Comes Now the Plaintiffs, Timothy Albright and David Neary, by and through their attorney of record, N. Trey Pettlon, and for Count III of their cause of action against the Defendant Missouri Gas and Energy, hereby allege and state to the Court as follows:

That the Plaintiffs incorporate by reference herein as if fully set forth herein, each and every statement, averment and/or allegation contained in paragraphs one (1) through twenty-eight (26) of Count I through II of the Plaintiffs' Petition for Damages.

29. The actions by Defendant were willful, malicious, wanton and with reckless indifference for the safety and rights of Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment against Defendant MGE in an amount

that is fair and reasonable and which will deter future reckless disregard by Defendant, for Plaintiffs' costs herein incurred in this action and for such other orders and relief as this Court may deem just and proper in the premises.

Respectfully Submitted,

*N. Trey Pettlon* #42281
N. Trey Pettlon #42281
112 West Loula
Olathe, Kansas 66061
(913) 393-2100
(913) 393-0210 FAX

ATTORNEY FOR PLAINTIFFS

STATE OF MISSOURI    )
                     )s.
COUNTY OF CLAY       )

    Timothy Albright, of lawful age, having been first duly sworn on his oath, deposes and states that he is the Petitioner in the above and foregoing, that the statements contained therein are true to the best of his knowledge, information and belief and that he has signed the same as his own free act and deed.

                                                                        */s/ Tim Albright*
                                                                        Timothy Albright

Subscribed and sworn to before me this 9th day of January, 2003.

                                        */s/ Gretchen Skram*
                                        Notary Public

My commission expires: 2/8/07

                                                                GRETCHEN SKRAM
                                                                 Notary Public
                                                                 State of Kansas
                                                                 Johnson County
                                                                My Appointment Expires 2/8/07


STATE OF MISSOURI    )
                     )s.
COUNTY OF CLAY       )

    David Neary, of lawful age, having been first duly sworn on his oath, deposes and states that he is the Petitioner in the above and foregoing, that the statements contained therein are true to the best of his knowledge, information and belief and that he has signed the same as his own free act and deed.

                                                                      */s/ David Neary*
                                                                        David Neary

Subscribed and sworn to before me this 9th day of January, 2003.

                                        */s/ Gretchen Skram*
                                        Notary Public

My commission expires: 2/8/07

                                                                GRETCHEN SKRAM
                                                                 Notary Public
                                                                State of Kansas
                                                                Johnson County
                                                                My Appointment Expires 2/8/07

CT System

Service of Process Transmittal Form

Clayton, Missouri

02/20/2003

Via Federal Express (2nd Day)

TO: Dennis K Morgan Vice President/Legal
Southern Union Company
One PEI Center
Wilkes Barre, PA 18711-0601

**RECEIVED FEB 2 1 2003**

RE: **PROCESS SERVED IN MISSOURI**

FOR MISSOURI GAS ENERGY (assumed name) Domestic State: De
True Name : Southern Union Company

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION: Timothy Albright, et al., pltfs. vs MISSOURI GAS ENERGY A Division of Southern Union Company, deft.

2. DOCUMENT(S) SERVED: Summons, Attachments, Petition, Request To Produce Documents (4), Interrogatories (5), Gas Incident Report

3. COURT: Circuit Court, Jackson County at Kansas City, Missouri
Case Number 03CV202450

4. NATURE OF ACTION: Petition for injuries sustained from explosion

5. ON WHOM PROCESS WAS SERVED: CT Corporation System, Clayton, Missouri

6. DATE AND HOUR OF SERVICE: By Certified mail on 02/20/2003 with Postmarked Date 02/18/2003

7. APPEARANCE OR ANSWER DUE: Within (30) days

8. ATTORNEY(S): N Trey Pettlon
112 West Loula
913 393 2100
Olathe, KS 66061

9. REMARKS:

CC: Bonny Nallon
Southern Union Company
One PEI Center
Wilkes Barre, PA 18711-0601

SIGNED CT Corporation System
PER Edythe King
ADDRESS 120 South Central Avenue
Suite 400
Clayton, MO 63105
SOP WS 0005156523

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.



# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JUSTINE E DEL MURO | Case Number: 03CV202450 |
|---|---|
| Plaintiff/Petitioner:<br>TIMOTHY ALBRIGHT | Plaintiff's/Petitioner's Attorney/Address:<br>N. TREY PETTLON III<br>112 WEST LOULA<br>OLATHE, KS 66061 |
| vs. | |
| Defendant/Respondent:<br>MISSOURI GAS ENERGY A DIVISION OF SOUTHERN UNION COMPANY | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Pers Injury-Other | (Date File Stamp) |

## Summons for Service by First Class Mail

The State of Missouri to: **MISSOURI GAS ENERGY A DIVISION OF SOUTHERN UNION COMPANY**

SERVE REGISTERED AGENT:
CT CORPORATION SYSTEM
THE DELAWARE CORPORATION
120 SOUTH CENTRAL AVENUE
CLAYTON, MO 63105



COURT SEAL OF
JACKSON COUNTY

You are summoned and, within 30 days after the enclosed acknowledgment is filed, you must file an answer to the enclosed petition with the clerk of this court and also must serve this answer upon Plaintiff's/Petitioner's attorney at the above address. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.

FEB 0 7 2003
Date Issued                                    Clerk

Further Information:

## Directions to Clerk

The clerk should issue one copy of this summons for each Defendant/Respondent to be served by first class mail. Under Section 506.150.4, RSMo, service by first class mail may be made by Plaintiff/Petitioner or any person authorized to serve process under Section 506.140, RSMo.

*For Court Use Only:* Document ID# 03-SFCM-40



# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JUSTINE E DEL MURO | Case Number: 03CV202450 |
|---|---|
| Plaintiff/Petitioner:<br>TIMOTHY ALBRIGHT<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>N. TREY PETTLON III<br>112 WEST LOULA<br>OLATHE, KS 66061 |
| Defendant/Respondent:<br>MISSOURI GAS ENERGY A DIVISION OF SOUTHERN UNION COMPANY | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Pers Injury-Other | (Date File Stamp) |

## Summons for Service by First Class Mail

The State of Missouri to: MISSOURI GAS ENERGY A DIVISION OF SOUTHERN UNION COMPANY

SERVE REGISTERED AGENT:
CT CORPORATION SYSTEM
THE DELAWARE CORPORATION
120 SOUTH CENTRAL AVENUE
CLAYTON, MO 63105



COURT SEAL OF
JACKSON COUNTY

You are summoned and, within 30 days after the enclosed acknowledgment is filed, you must file an answer to the enclosed petition with the clerk of this court and also must serve this answer upon Plaintiff's'/Petitioner's attorney at the above address. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.

FEB 0 7 2003
Date Issued

_____
Clerk

Further Information:

## Directions to Clerk

The clerk should issue one copy of this summons for each Defendant/Respondent to be served by first class mail. Under Section 506.150.4, RSMo, service by first class mail may be made by Plaintiff/Petitioner or any person authorized to serve process under Section 506.140, RSMo.

For Court Use Only: Document ID# 03-SFCM-40

# THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

## NOTICE OF DISPUTE RESOLUTION SERVICES

### PURPOSE OF NOTICE

As a party to a lawsuit in this court, you have a right to have a judge or a jury decide your case. However, most lawsuits are settled by the parties before trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often, such services are the most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### YOUR RIGHTS AND OBLIGATIONS IN COURT ARE NOT AFFECTED BY THIS NOTICE

Participation in any dispute resolution procedure is entirely voluntary. You will not be penalized if you do not use such a procedure. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use a dispute resolution procedure or not. IF YOU HAVE BEEN SERVED WITH A PETITION OR MOTION FOR MODIFICATION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF A DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE A DISPUTE RESOLUTION PROCEDURE.

### DISPUTE RESOLUTION PROCEDURES

There are several procedures designed to help parties settle lawsuits. Most of the procedures involve the services of a third party, often referred to as a "neutral," who is trained in dispute resolution and is not partial to any party. The services of the neutral are not provided by this court. The services are provided by organizations or individuals who may charge a fee for this help. Some of the well recognized dispute resolution procedures are:

(1) "Arbitration," a procedure in which a neutral persons, typically one person or a panel of three persons, hears both sides and decides the matter. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, select the arbitrator or arbitrators and determine the rules under which the arbitration will be conducted;

(2) "Early neutral evaluation," a process designed to bring together parties to litigation and their counsel in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process;

(3) "Mediation," a process in which a neutral third party facilitates communication between the parties to promote settlement. A mediator may not impose his or her own judgment on the issues for that of the parties;